IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br><br>HEATH ASHLEY HARMON,<br><br>　　　　Defendant. | CRIMINAL NO. 3:24-CR-64<br><br>**DEFENDANT'S SENTENCING<br>MEMORANDUM** |

**Table of Contents**

I.　Introduction ................................................................................................. 2

II.　The Court should impose a sentence below the advisory
　　guideline range ........................................................................................... 2

　　A.　The 18 U.S.C. § 3553(a) factors, including Mr. Harmon's history
　　　　and characteristics, support a downward variance .......................... 3

　　B.　The advisory guideline range overemphasizes the seriousness of
　　　　the offense ............................................................................................. 8

III.　Conclusion.................................................................................................. 10

1

I.  **Introduction.**

On March 5, 2025, Mr. Harmon accepted responsibility for his actions by pleading guilty to count 1 of the indictment: receipt of child pornography in violation of 18 U.S.C § 2252A(a)(2) and 2252A(b)(1). *See* ECF Nos. 2, 28, 30. This matter is scheduled for sentencing on August 27, 2025. ECF No. 32.

The final presentence report ("PSR") provides a total offense level of 34 and a criminal history category of I, resulting in an advisory guideline range of 155-188 months. PSR, ¶ 105.

| | |
|---|---|
| Base offense level | 22 |
| SOC: prepubescent minor under §2G2(b)(2) | +2 |
| SOC: distribution under §2G2.2(b)(3)(F) | +2 |
| SOC: material portraying sadistic or masochistic conduct or other depictions of violence or sexual abuse or exploitation under §2G2.2(b)(4)(A), (b)(4)(B) | +4 |
| SOC: use of a computer under §2G2.2(b)(6) | +2 |
| SOC: 600 or more images under §2G2.2(b)(7)(D) | +5 |
| Adjusted offense level | 37 |
| Acceptance of responsibility under §3E1.1(a) and §3E1.1(b) | -3 |
| Total offense level | 34 |

*Id.* ¶¶ 31-44. Mr. Harmon did not object to this calculation. ECF No. 36.

Mr. Harmon will request a downward variance.

II.  **The Court should impose a sentence below the advisory guideline range.**

### A. The 18 U.S.C. § 3553(a) factors, including Mr. Harmon's history and characteristics, support a downward variance.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). "Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.'" *Id.* at 487-88 (first quoting *Williams v. People of State of New York*, 337 U.S. 241, 247 (1949), and then citing *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937)). Mr. Harmon's life, as reflected in the PSR, shows such mitigating human failings.

<u>Trauma</u>

Mr. Harmon's struggles began at an early age and continued into adulthood. A social outcast as a child, he often got into physical fights due to persistent bullying and teasing. PSR, ¶ 56. Additionally, it was difficult for him to make friends. *Id.* As he notes, his struggles as a child were due to the onset of autism spectrum disorder. *Id.*

Growing up, he did not have sufficient time to settle down and create lasting friendships. He moved several times due to his father being enlisted in the United States Air Force. *Id.* ¶ 55. Despite the struggles, he still had his support system.

But as he grew older, his support system disappeared. His parents separated

when he had just legally become an adult, at about 18 years old. *Id.* His mother later passed away in 2000 from health-related issues. *Id.* ¶ 60. His father then passed away in 2005, also from health-related issues. *Id.* ¶ 59. And his brother, his best friend, died in 2018 due to asthma-related complications. *Id.* ¶ 61.

Also as an adult, Mr. Harmon reports being sexually assaulted. *Id.* ¶ 55 n.4. The effects of sexual assaults on a person are well-known, including on that person's physical, mental, and emotional well-being.

Mr. Harmon's past struggles and prior trauma support a downward variance.

<u>Prior military service</u>

Mr. Harmon followed in his father's footsteps and enlisted in the Air Force. PSR, ¶ 63. He served for about 5 years, from 1998 through 2003. *Id.* ¶ 96. While he did not participate in combat, he still provided necessary work involving power production and mobile generators. *Id.* ¶ 96. Most importantly, he was honorably discharged and received no court martials or non-judicial punishments. *Id.* During this time, he was stationed in different areas, from New Mexico, to the United Kingdom, to South Carolina. *Id.*

Courts have acknowledged the impact of prior military service. *See Kimbrough v. United States*, 552 U.S. 85, 110-11 (2007) (approving downward variance where the defendant had no prior felony convictions, had served in combat during Operation Desert Storm, had been honorably discharged from the Marine Corps, and had a steady history of employment); *United States v. Chase*, 560 F.3d 828, 831 (8th Cir.

4

2009) ("Chase's advanced age, prior military service, health issues, and employment history were all factual bases that would warrant a downward variance without running afoul of the statutory factors under § 3553(a).").

In addition to the general benefit to society from encouraging individuals to serve, Mr. Harmon's actions while serving are mitigating. Because he was honorably discharged without incurring any court martials or non-judicial punishments, there is at least one data point regarding how Mr. Harmon could function in a controlled environment.

Mr. Harmon's prior service supports a downward variance.

### Mental health and alcohol use

Mr. Harmon began using alcohol at age 12. PSR, ¶ 79. While he rarely consumes alcohol currently, he began consuming it early enough that it likely had an effect on his brain functioning.

At least one court has found that "substance-use disorders change individuals' brain functioning in ways that make it difficult for people grappling with addiction to avoid relapses during the course of their recovery." *United States v. Carter*, 506 F. Supp. 3d 1204, 1210 (M.D. Ala. 2020) (citing *United States v. Mosley*, 277 F. Supp. 3d 1294, 1298 (M.D. Ala. 2017)).

> An important characteristic of substance use disorders is an underlying change in brain circuits that may persist beyond detoxification, particularly in individuals with severe disorders. The behavioral effects of these brain changes may be exhibited in the repeated relapses and intense drug craving when the individuals are exposed to drug-related stimuli. These persistent drug effects may benefit from long-term

approaches to treatment.

*Mosley*, 277 F. Supp. 3d at 1298 (quoting DSM-V at 483).

Moreover, Mr. Harmon reports having persistent depressive disorder and autism spectrum disorder. PSR, ¶ 73.

> The essential feature of persistent depressive disorder (dysthymia) is a depressed mood that occurs for most of the day, for more days than not, for at least 2 years . . . .
>
> Individuals with persistent depressive disorder describe their mood as sad or 'down in the dumps.' During periods of depressed mood, at least two of the six symptoms from Criterion B are present [poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration or difficulty making decisions, feelings of hopelessness].

DSM-V at 169. This is consistent with Mr. Harmon hoping that an external force would take his life. PSR, ¶ 75.

> As a district court has explained,
>
> the traditional rationales for punishment have less force when applied to mentally ill and cognitively limited defendants. Desert (blameworthiness) loses some bite because those with reduced ability to reason, or to control their impulses, are less deserving of punishment than those who act of viciousness or greed; Deterrence has less value because people with reduced capacities are less susceptible to a system of punishment and reward. The remaining rationale—incapacitation to protect the public safety—does not justify incarcerating mentally ill, intellectually disabled defendants unless they are violent.

*United States v. Ferguson*, 942 F. Supp. 2d 1186, 1193 (M.D. Ala. 2013) (cleaned up) (internal citations and quotations omitted).

Mr. Harmon's mental health and prior substance use support a downward variance.

### Rehabilitation

"The hope of rehabilitation begins with accepting responsibility." *United States v. Helton*, 653 F. Supp. 3d 534, 539 (N.D. Ind. 2023) (citing *McKune v. Lile*, 536 U.S. 24, 47 (2002)).

Mr. Harmon began that path by pleading guilty to the offense. And prior to that, he helped law enforcement in their investigation by providing a post-*Miranda* interview incriminating himself. PSR, ¶ 17.

He will likely continue on the path towards rehabilitation by participating in mental health treatment, any recommended substance abuse treatment, and sex offender treatment.

Moreover, he can and has done well in structured environments, such as when he worked in the Air Force. While he has had three violations in the Muscatine County Jail, the two most recent were only three days apart. *Id.* ¶ 10. One involved forgetting to take a pill and having food and books in his cell. *Id.* And in the other he ultimately complied with the jail staff directives. *Id.*

Mr. Harmon's potential for rehabilitation supports a downward variance.

### Criminal history

Mr. Harmon has almost no criminal history despite being 49 years old. The only prior offenses reflected in the PSR are three driving under suspension convictions from 2005. PSR, ¶ 47-49. Both prior and subsequent to 2005, he has not had any additional issues with the criminal justice system. Indeed, he would have

received a reduction of 2 points if his current conviction was not for a sex crime or another qualifying offense. *See* U.S. SENT'G COMM'N, GUIDELINES MANUAL, §4C1.1 (U.S. SENT'G COMM'N 2024). The Court may weigh his lack of substantial criminal history under § 3553(a)(1) as a mitigating factor under his history and characteristics prong supporting a downward variance.

The Court may also account for his limited criminal history in relation to what constitutes just punishment and adequate deterrence. *See United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) ("Also significant is the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned. Consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for 'just punishment,' and 'adequate deterrence'") (cleaned up) (internal citations omitted). While he has been sentenced before, he has never been sentenced to a lengthy prison term, much less as a result of a federal conviction.

Mr. Harmon's lack of a substantial criminal history supports a downward variance.

**B.     The advisory guideline range overemphasizes the seriousness of the offense.**

Most the enhancements here are the typical §2G2.2 enhancements found in the vast majority of child pornography cases. *See* PSR, ¶¶ 32-36 (prepubescent minor or minor under the age of 12, distribution, material that portrays sadistic or masochistic conduct or other depictions of violence, use of a computer, and 600 or

more images).

Based on 2023 statistics published by the Sentencing Commission, these enhancements were applied with the following regularity:

| | |
|---|---|
| Material involving a minor under 12 under §2G2.2(b)(2) | 94.4% |
| Distribution under §2G2.2(b)(3)(F) | 36.4% |
| Material portraying sadistic or masochistic conduct; or sexual abuse or exploitation of an infant or toddler under §2G2.2(b)(4)(A), (B) | 80.8% |
| Use of a computer under §2G2.2(b)(6) | 97.1% |
| 600 or more images under §2G2.2(b)(7)(D) | 76.6% |

*See* U.S. SENT'G COMM'N, USE OF GUIDELINES AND SPECIFIC OFFENSE CHARACTERISTICS GUIDELINE CALCULATION BASED FISCAL YEAR 2023, at 99-100 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2023/Ch2_Guideline_FY23.pdf).

"[A]cross all non-production child pornography offense types, §2G2.2 fails to distinguish adequately between more and less severe offenders." U.S. SENT'G COMM'N, FED. SENT'G OF CHILD PORNOGRAPHY: NON-PRODUCTION OFFENSES, at 19 (June 2021) (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf).

At least one court has concluded the same. In finding §2G2.2 ill-suited to

9

fashioning a reasonable sentence, the court in *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1105 (N.D. Iowa 2009), found that the guideline "impermissibly and illogically skews sentences for even 'average' defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability."

> This is so, largely because the level enhancements, some quite extreme, are based on circumstances that appear in nearly every child pornography case: using the internet, amassing numerous images (made particularly easy by the internet); presence of video clips counted as 75 images each; presence of images of prepubescent minors and violence (broadly defined to include a prepubescent minor engaged in a sex act); and some 'distributing' in return for other images. This guideline, thus, blurs logical differences between least and worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment.

*Id.* (citations omitted).

Because the advisory guideline range overemphasizes the seriousness of the offense, the Court should vary downwards.

### III. Conclusion.

Wherefore, Mr. Harmon respectfully requests that the Court impose a sentence consistent with the arguments in this sentencing memorandum.

    Respectfully submitted,

    FEDERAL DEFENDER'S OFFICE
    CBI Bank & Trust Building
    101 W. 2nd Street, Suite 401
    Davenport, Iowa 52801-1815
    TELEPHONE:  (563) 322-8931
    TELEFAX:  (563) 383-0052
    EMAIL: abdel_reyes@fd.org

By:  /s/*Abdel Reyes*
**Abdel Reyes**
Assistant Federal Defender
ATTORNEY FOR
DEFENDANT

cc: Melisa K. Zaehringer, AUSA

CERTIFICATE OF SERVICE
I hereby certify that on August 20, 2025, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
   /s/   Natalie Gahan